IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHELLE SIPE; JILL GROSS; R. DAVID NEW; and, ACCESS NOW, INC., a not-for-profit corporation, | Case No. |
| Plaintiffs, | |
| v. | Filed Electronically |
| ESTÉE LAUDER COMPANIES, INC., | |
| Defendant. | |

**COMPLAINT FOR PERMANENT INJUNCTION
REQUIRING CHANGES TO CORPORATE POLICY AND THE ELIMINATION OF
DIGITAL ACCESS BARRIERS PURSUANT TO 42 U.S.C. § 12188(a)(2)**

Michelle Sipe ("Plaintiff Sipe"), Jill Gross ("Plaintiff Gross"), R. David New ("Plaintiff New") and Access Now, Inc. ("Plaintiff ANI") (collectively "Plaintiffs") seek a permanent injunction requiring a change in Estée Lauder Companies, Inc. ("Defendant" or the "Company") corporate polices to cause Defendant's websites to become, and remain, accessible and in support thereof asserts as follows:

**INTRODUCTION**

1. Plaintiffs bring this action against Defendant and asserts that its websites are not accessible to blind and visually impaired consumers in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"). Plaintiffs seek a permanent injunction to cause a change in Defendant's corporate policies related to its web-based technologies so that Defendant's websites will become, and will remain, accessible. The websites at issue are: www.esteelauder.com, www.clinique.com, www.prescriptives.com, www.labseries.com, www.origins.com, www.tommy.com, www.maccosmetics.com,

www.CremeDeLaMer.com, www.BobbiBrownCosmetics.com, www.dkny.com, www.donnakaran.com, www.aveda.com, www.jomalone.com, www.bumbleandbumble.com, www.michaelkors.com, www.darphin.com, www.tomford.com, www.smashbox.com, www.zegna.com, www.aerin.com, www.marni.com, www.toryburch.com, www.oliolusso.com, www.lelabofragrances.com, www.fredericmalle.com and www.glamglowmud.com (collectively the "Websites").

2. While the increasing pervasiveness of digital information presents an unprecedented opportunity to increase access to goods and services for people with perceptual or motor disabilities, website developers and web content developers often implement digital technologies without regard to whether those technologies can be accessed by individuals with disabilities. This is notwithstanding the fact that accessible technology is both readily available and cost effective.

3. Blind and visually impaired consumers must use screen reading software or other assistive technologies in order to access website content. Defendant's Websites contain digital barriers which limit the ability of blind and visually impaired consumers to access the sites.

4. Plaintiffs have patronized Defendant's Websites in the past, and intend to continue to patronize Defendant's Websites. However, unless Defendant is required to eliminate the access barriers at issue, and required to change its policies so that access barriers do not reoccur on Defendant's Websites, Plaintiffs will continue to be denied full access to those Websites as described, and will be deterred from fully using Defendant's Websites.

5. The ADA expressly contemplates the type of injunctive relief that Plaintiffs seek in this action. In relevant part, the ADA requires:

> [i]n the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by

>individuals with disabilities….Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy. . .

42 U.S.C. § 12188(a)(2).

6.  Because Defendant's Websites have never been accessible and because Defendant does not have, and has never had, a corporate policy that is reasonably calculated to cause its Websites to become and remain accessible, Plaintiffs invoke 42 U.S.C. § 12188(a)(2) and seek a permanent injunction requiring:

   a) that Defendant retain a qualified consultant acceptable to Plaintiffs ("Mutually Agreed Upon Consultant") who shall assist it in improving the accessibility of its Websites so that they comply with version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0 AA");

   b) that Defendant work with the Mutually Agreed Upon Consultant to ensure that all employees involved in website development and content development be given web accessibility training on a periodic basis calculated to achieve ongoing compliance with WCAG 2.0 AA;

   c) that Defendant work with the Mutually Agreed Upon Consultant to perform an automated accessibility audit on a periodic basis to evaluate whether Defendant's Websites continue to comply with WCAG 2.0 AA on an ongoing basis;

   d) that Defendant work with the Mutually Agreed Upon Consultant to perform end-user accessibility/usability testing on a periodic basis with said testing to be performed by individuals with various disabilities to evaluate whether Defendant's Websites continue to comply with WCAG 2.0 AA on an ongoing basis;  and,

   e) that Defendant work with the Mutually Agreed Upon Consultant to create an accessibility policy that will be posted on its Websites, along with an e-mail address and toll free phone number to report accessibility-related problems.[1]

---

[1] Web-based technologies have features and content that are modified on a daily, and in some instances an hourly, basis, and a one time "fix" to an inaccessible website will not cause the website to remain accessible without a corresponding change in corporate policies related to those web-based technologies. To evaluate whether an inaccessible website has been rendered accessible, and whether corporate policies related to web-based technologies have been changed in a meaningful manner that will cause the website to remain accessible, the website must be reviewed on periodic basis using both automated accessibility screening tools and end user testing by disabled individuals.

**JURISDICTION AND VENUE**

7. This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 and 42 U.S.C. § 12188.

8. Plaintiff Sipe's and Plaintiff Gross' claims asserted herein arose in this judicial district and Defendant does substantial business in this judicial district.

9. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial in which a substantial part of the acts and omissions giving rise to the claims occurred.

**PARTIES**

10. Plaintiff Sipe, is and, at all times relevant hereto, has been a resident of the Commonwealth of Pennsylvania, residing within this judicial district. Plaintiff Sipe is and, at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*.

11. Plaintiff Gross is and, at all times relevant hereto, has been a resident of the Commonwealth of Pennsylvania. Plaintiff Gross is and, at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*.

12. Plaintiff New is and, at all times relevant hereto, has been a resident of the State of Florida. Plaintiff New is and, at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*. Plaintiff New is a member of and serves as President of Access Now, Inc.

13. Plaintiff ANI is non-profit organization that provides advocacy services on behalf of blind and other disabled individuals who are members of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*. Plaintiff ANI has members representing 47 states, including residents of the Commonwealth of Pennsylvania. ANI is engaged in seeking compliance with the ADA through educational efforts to correct violations when found, and when necessary and appropriate, in litigation to require persons and entities in violation of the ADA to comply with the Act. One of the primary purposes of the Association is to represent its members to assure that public accommodations are accessible to and useable by its members, and to assure that its members are not discriminated against because of their disabilities, or denied the benefits of the services, programs, and activities of public accommodations. ANI members continue to be discriminated against by Defendants' lack of compliance.

14. Defendant Estée Lauder Companies, Inc. is headquartered at 767 Fifth Avenue, New York, New York 10153. Defendant owns, operates and maintains retail brick and mortar stores across the United States, including within the Commonwealth of Pennsylvania. Defendant's retail stores offer goods and services to the public. Defendant also offers goods and services to the public through the Websites. Defendant's brick and mortar stores and websites are integrated and are public accommodations pursuant to 42 U.S.C. § 12181(7).

## FACTUAL BACKGROUND

15. The Internet has become a significant source of information and a means for conducting everyday activities such as shopping, banking, etc. for both sighted and blind and visually-impaired persons, as well as individuals with other perceptual or motor disabilities.

16.     Blind individuals may access websites by using keyboards in conjunction with screen reader software that converts text to audio.  Screen reader software provides the primary method by which a blind person may independently use the Internet.  Unless websites are designed to be read by screen reader software, blind individuals are unable to fully access websites and the information, products and services available through the sites.

17.     The international website standards organization, W3C, has published WCAG 2.0 AA.  WCAG 2.0 AA provides widely accepted guidelines for making websites accessible to individuals with disabilities.  These guidelines have been endorsed by the United States Department of Justice and numerous federal courts.

18.     Through its Websites, Defendant offers products for online sale, home delivery and purchase at Defendant's retail stores.  Defendant's Websites also help users locate stores, view and purchase products, read product descriptions and prices, create and read product reviews, sign up for email lists and perform a variety of other functions.

19.     Plaintiffs are permanently blind and use screen reader software in order to access the Internet and read website content.

20.     Despite several attempts to use and navigate the Websites, Plaintiffs have been denied the full use and enjoyment of the facilities, goods and services available on the Websites as a result of access barriers.

21.     The barriers at the Websites have caused a denial of Plaintiffs' full and equal access multiple times in the past, and now deter Plaintiffs from attempting to use Defendant's website.

22.     The access barriers at the Websites, include but are not limited to, the following:

   a) A text equivalent for every non-text element is not provided;

b) Frames are not titled with text that facilitates frame identification and navigation;

c) When pages utilize scripting languages to display content, or to create interface elements, the information provided by the script is not identified with functional text that can be read by assistive technology;

d) When electronic forms are designed to be completed online, the form does not allow people using assistive technology to access the information, field elements, and functionality required for completion and submission of the form, including all directions and cues;

e) Information, structure and relationships conveyed through presentation cannot be programmatically determined and/or are not available in text;

f) Text cannot be resized without assistive technology up to 200 percent without loss of content or functionality;

g) If the content enforces a time limit, the user is not able to extend, adjust or disable it;

h) Web pages do not have titles that describe topic or purpose;

i) The purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context;

j) The keyboard operable user interface does not have a mode of operation where the keyboard focus indicator is visible;

k) The default human language of each web page cannot be programmatically determined;

l) When a component receives focus, it may initiate a change of context;

m) Changing the setting of a user interface component may automatically cause a change of context where the user has not been advised of the behavior before using the component;

n) Labels or instructions are not provided when content requires user input;

o) In content implemented using markup languages, elements do not have complete start and end tags, elements are not nested according to their specifications, elements may contain duplicate attributes and/or any IDs are not unique; and,

p) The name and role of all UI elements cannot be programmatically determined; things that can be set by the user cannot be programmatically set; and/or

notification of changes to these items is not available to user agents, including assistive technology.

23. If the Websites were accessible, Plaintiffs could independently shop for and research products via Defendant's websites.

24. Though Defendant has centralized policies regarding the maintenance and operation of its Websites, Defendant has never had a plan or policy that is reasonably calculated to make its Websites fully accessible to, and independently usable by, blind people.

25. Without injunctive relief, Plaintiffs and other blind individuals will continue to be unable to independently use the Websites in violation of their rights under the ADA.

**SUBSTANTIVE VIOLATION**
**(Title III of the ADA, 42 U.S.C. § 12181 *et seq*.)**

26. The allegations contained in the previous paragraphs are incorporated by reference.

27. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq*., provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

28. Defendant's retail stores and integrated websites are public accommodations within the definition of Title III of the ADA, 42 U.S.C. § 12181(7).

29. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

30. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages or accommodations, which is equal to the opportunities afforded to other individuals. 42 U.S.C. §12182(b)(1)(A)(ii).

31. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things: "a failure to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage or accommodation being offered or would result in an undue burden." 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii); *see also* 28 C.F.R. § 36.303(a).

32. Title III requires that "[a] public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1). The regulation sets forth numerous examples of "auxiliary aids and services," including "…accessible electronic and information technology; or other effective methods of making visually delivered materials available to individuals who are blind or have low vision." 28 C.F.R. § 36.303(b).

33. The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder. Plaintiffs, who are blind and have disabilities that substantially limited the major life activity of seeing within the meaning of 42 U.S.C. §§ 12102(1)(A) and (2)(A), have been denied full and equal access to the Websites. Plaintiffs have not been provided services that are provided to other patrons who are not disabled, and/or have been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

34. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures and rights set forth and incorporated therein, Plaintiffs request relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for:

a. A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant took no action that was reasonably calculated to ensure that its Websites are fully accessible to, and independently usable by, blind individuals;

b. A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504 (a) which directs Defendant to take all steps necessary to bring its Websites into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that its Websites are fully accessible to, and independently usable by, blind individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law—the specific injunctive relief requested by Plaintiffs is described more fully in Paragraph 6 above;

c. Payment of costs of suit;

d. Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505; and,

    e.    The provision of whatever other relief the Court deems just, equitable and appropriate.

Dated: December 2, 2015

Respectfully Submitted,

*/s/ Benjamin J. Sweet*
R. Bruce Carlson
Benjamin J. Sweet
Stephanie K. Goldin
CARLSON LYNCH SWEET & KILPELA LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Phone: (412) 322.9243
Fax: (412) 231.0246
www.carlsonlynch.com